FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
DEC 1 2 2024
TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DE'JARNETTE JOHNSON                                                         Plaintiff

v.                          Case No. __4:24-cv-1094-BSM__

SERGEANT DAKOTAH BAILEY,
   in his individual capacity                                         Defendant

## COMPLAINT

1. This case concerns the unconstitutional actions of an Arkansas State Police Officer at the annual Benton-Bryant "Salt Bowl" football game at War Memorial Stadium in Little Rock on August 30, 2024. Contrary to clearly established constitutional rights, Defendant, Arkansas State Police Sergeant Dakotah Bailey, retaliated against Plaintiff, De'Jarnette Johnson, for filming Arkansas State Police officers as they made a violent arrest outside the stadium during the game.

2. In an effort to heighten security, the organizers of the Salt Bowl increased police presence at the 2024 game. Officers from at least seven law-enforcement agencies, including the Arkansas State Police, provided security. This was the first time Arkansas State Police officers worked the event.

3. The Arkansas State Police officers were involved in several disturbingly violent arrests at the 2024 Salt Bowl.

4. In one event, a 16-year-old Black girl was arrested when she walked the wrong way in the concourse at the end of the game. She ran into several Arkansas

This case assigned to District Judge __Miller__
and to Magistrate Judge __Moore__

State Police officers, who forcefully grabbed her by the arm just a few seconds after encountering her. The officers violently slammed her to the ground and held her down while handcuffing her. They yelled and cursed at her during the arrest.

5. In another instance, Arkansas State Police officers removed a young Black man from the stadium. While walking him through the concourse, the officers forcefully grabbed him by the arm, threw him to the ground, and punched him in the side. Once out of the stadium, the officers shoved the young man against a chain link fence and arrested him. During the arrest, the young man shouted, "I can't breathe."

6. Ms. Johnson planned to attend the Salt Bowl to watch members of her family play in the game. She was about to enter the stadium when she saw the young man being arrested. Ms. Johnson and a group of other citizens stopped to watch the arrest.

7. When she heard him shout, "I can't breathe," Ms. Johnson began filming the arrest on her cell phone. At all times while filming, Ms. Johnson remained about ten to fifteen feet away. She did not approach the officers or attempt to interfere with the arrest.

8. However, almost immediately after Ms. Johnson began filming, Sergeant Bailey aggressively marched toward her while pointing his finger to the side. As he approached, Sergeant Bailey yelled at Ms. Johnson to "keep it moving" four times in quick succession.

9. When Sergeant Bailey reached the place where Ms. Johnson stood filming, he immediately grabbed her cell phone out of her hand. Ms. Johnson's initial video recording ended at the moment Sergeant Bailey seized her cell phone.

10. Sergeant Bailey directed his attention solely on Ms. Johnson, who seemed to be the only citizen filming the police's conduct. He did not address anyone else who stopped to watch the arrest or command anyone else to leave the area.

11. Most of the violent conduct recorded at the 2024 Salt Bowl was perpetrated by Arkansas State Police officers; however, members of the Arkansas State Police were not wearing body cameras or audio recording devices while working at the game. The public would have never known about the violent actions of the Arkansas State Police officers were it not for the video taken by Ms. Johnson and bodycam footage collected by officers from other police agencies.

12. Citizens like Ms. Johnson have an important and well-established constitutional right to hold police officers accountable by observing and recording their actions. Sergeant Bailey violated that right.

13. The Fourth and Fourteenth Amendments of the United States Constitution protect people from unreasonable searches and seizures of their property by government actors.

14. Documenting police conduct in public is activity protected by the First Amendment of the United States Constitution.

15. Sergeant Bailey violated Ms. Johnson's rights under the First, Fourth, and Fourteenth Amendments when he unreasonably confiscated her cell phone and prevented her from filming police conduct.

## JURISDICTION AND VENUE

16. This Court has jurisdiction under 28 U.S.C. § 1331 because Ms. Johnson's claims arise under the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

17. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district in which the events giving rise to Ms. Johnson's claims occurred.

## PARTIES

18. Plaintiff De'Jarnette Johnson is a citizen of Little Rock, Arkansas.

19. Defendant Dakotah Bailey was at all times relevant to this complaint a duly appointed police officer of the Arkansas State Police holding the rank of sergeant. His actions alleged in this complaint were taken under color of the law of the State of Arkansas. He is sued in his individual capacity.

## FACTS

### THE 2024 SALT BOWL

20. The Salt Bowl is an annual football game between Benton High School and Bryant High School, which are both located in Saline County, Arkansas.

21. The Salt Bowl is attended by approximately 25,000–30,000 people each year. Because of its size, the Salt Bowl has been held at War Memorial Stadium since 1999.

22. The Salt Bowl is planned by a group called the "Salt Bowl Committee," government officials from Benton and Bryant, and administrators from each school.

23. On June 20, 2024, Benton Mayor Tom Farmer sent an email to several Salt Bowl organizers regarding security at the game. According to Mayor Farmer, the Salt Bowl had lost attendance since the Covid era, partly because of the lack of security at War Memorial Stadium. The organizers planned to increase security at the 2024 Salt Bowl so citizens of Benton and Bryant would feel comfortable attending the game.

24. In previous years, only the Arkansas State Park Rangers, who are in charge of overseeing War Memorial Stadium, provided security at the Salt Bowl. However, in 2024, law-enforcement officers from Arkansas State Parks, the Arkansas State Police, the Pulaski County Sherriff's Office, the Little Rock Police Department, the Bryant Police Department, and the Benton Police Department, as well as school resource officers from Benton High School and Bryant High School, provided security at the Salt Bowl.

25. Specifically, ten officers from the Arkansas State Police Troop A, including Sergeant Bailey, were hired to work as off-duty police officers at the Salt Bowl. These officers were paid by the Bryant School District.

26. Although this assignment was considered off-duty work, it was coordinated by the Arkansas State Police, including Captain Jeff Sheeler, who is the Arkansas State Police Troop A Commander.

27. Arkansas State Police Policy 109 addresses secondary and concurrent work. Under this policy, "Secondary Employment" means employment by a non-state employer, including private companies or organizations and self-employment.

28. Policy 109 requires Arkansas State Police employees to submit a Secondary Employment Form prior to accepting secondary employment. The request must be reviewed by the employee's supervisor and approved by the Arkansas State Police Secretary, Division Director, or their designee.

29. According to an email sent to Captain Sheeler on July 25, 2024, Major Ron Casey preapproved the off-duty work at the Salt Bowl. The officers who worked the event also submitted Secondary Employment Forms, which were signed by Captain Sheeler and Major Casey.

30. Major Casey also approved the officers to wear their Class B Arkansas State Trooper uniforms to the Salt Bowl. The Class B uniform is the Arkansas State Police's standard short-sleeve uniform. Arkansas State Police officers regularly wear this uniform while on duty.

31. At all times relevant to Ms. Johnson's claims, Sergeant Bailey was wearing an Arkansas State Trooper Uniform and carrying a firearm, as approved by the Arkansas State Police.

**FILMING INCIDENT**

32. On the evening of August 30, 2024, Ms. Johnson came to War Memorial Stadium to watch members of her family play in the Salt Bowl.

6

33. As Ms. Johnson walked toward an entrance, she saw Arkansas State Police officers hustle a young Black man out of the stadium and arrest him.

34. Ms. Johnson heard the young man yell, "I can't breathe."

35. Ms. Johnson began filming the arrest from about ten to fifteen feet away. She did not attempt to move toward the officers, engage with the officers, or interfere with the arrest. She was not blocking any entrances to the stadium or impeding traffic.

36. Just four seconds after Ms. Johnson began filming, Sergeant Bailey marched toward her while aggressively gesturing to the side. He shouted at her to "keep it moving" four times in quick succession.

37. Just as Sergeant Johnson got to the place Ms. Johnson was standing, which was less than five seconds after he first started shouting at her, Sergeant Bailey grabbed Ms. Johnson's cell phone from her hand. Ms. Johnson's initial recording was stopped at the moment Sergeant Bailey confiscated her cell phone.

38. Sergeant Bailey's demands were directed solely at Ms. Johnson, who appeared to be the only person openly filming the arrest.

39. After Sergeant Bailey returned Ms. Johnson's cell phone, she began recording again, this time with the phone pointed toward her face. The video shows Ms. Johnson walking away and trying to determine where she could enter the stadium. Sergeant Bailey can be heard in the background shouting, "Leave. Leave. I told you to leave."

40. As she approached the entrance, a stadium worker told Ms. Johnson that she could not enter because Sergeant Bailey ejected her. A member of Ms. Johnson's family called Sergeant Bailey over to clarify whether Ms. Johnson had been ejected from the game.

41. Sergeant Bailey confirmed that Ms. Johnson was not ejected and in an aggressive tone stated: "But you need to listen. I told you to stop and move and you didn't, did you. I was directly looking at you, telling you what to do and instead of doing what I told you, you kept your phone in my face."

42. Ms. Johnson tried to respond, but Sergeant Johnson shouted that he was talking. Sergeant Bailey then told Ms. Johnson to either leave or go to her seat and sit down.

43. Ms. Johnson covered her mouth with her hand as Sergeant Johnson yelled at her. She then responded that she was just trying to get into the game and her exchange with Sergeant Bailey ended.

44. Sergeant Bailey's conduct caused Ms. Johnson to suffer fear, anxiety, and emotional distress.

### COMPLAINT TO THE ARKANSAS DEPARTMENT OF PUBLIC SAFETY

45. On September 3, 2024, Ms. Johnson filed a complaint with the Arkansas Department of Public Safety regarding Sergeant Bailey's conduct.

46. Arkansas State Police Captain Jeff Sheeler responded to Ms. Johnson's complaint on September 17, 2024. In the response, Captain Sheeler states: "While the videoing of the encounter is not illegal, it is illegal for you to not follow the

lawful order of the Sergeant who ordered you to 'keep it moving.' You failed to react to his repeated orders to move on. . . . The volume of his voice and his demeanor was in direct correlation to your non-compliance. Only when the Sergeant approached you and took your attention away from your phone by taking possession of it, did you comply."

47. Captain Sheeler goes on to state, "You were then allowed to enter the game even though your conduct could have resulted in your arrest as well. The order was issued for the protection of you and the other patrons who had come to watch a football game. I understand you did not like to be talked to in this manner but in the situation, the Sergeant did not break policy or law. Therefore, you have no <u>valid</u> complaint."

48. Captain Sheeler's letter further advises Ms. Johnson to "always follow the lawful orders of the police. . . . Your agreement with those orders is not a requirement but what **is** required from citizens is compliance. You may *disagree* with what an official has instructed you to do—and that is ok—but you must always follow the law."

49. Essentially, Captain Sheeler's letter asserts that police can trump a citizen's right to record and observe their conduct by simply ordering the citizen to stop recording and to leave. This conclusion is counter to an individual's well-established rights.

## CAUSES OF ACTION

### COUNT ONE: Fourth and Fourteenth Amendment Violation

50. Ms. Johnson incorporates the previous paragraphs as if fully stated herein.

51. The Fourth and Fourteenth Amendments protect the rights of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

52. Ms. Johnson did not commit any crime relating to her encounter with Sergeant Bailey.

53. Sergeant Bailey lacked reasonable suspicion, or even arguable reasonable suspicion, that Ms. Johnson had committed a crime.

54. Sergeant Bailey seized Ms. Johnson's person when he accosted her and took her cell phone. A reasonable person would not feel free to leave when a police officer confiscates their property while screaming at them. And Ms. Johnson did not feel free to leave.

55. Because Sergeant Bailey did not have the requisite level of suspicion to seize Ms. Johnson's person, seizure of her person was unreasonable.

56. Sergeant Bailey's confiscation of Ms. Johnson's cell phone was a seizure for purposes of the Fourth Amendment. Sergeant Bailey meaningfully interfered with Ms. Johnson's possessory interest when he took the phone and prevented her from using it to lawfully record.

57. Because Sergeant Bailey did not have the requisite level of suspicion to seize Ms. Johnson's cell phone, his warrantless seizure of her cell phone was unreasonable.

58. As a result, Sergeant Bailey deprived Ms. Johnson of her right to be free from unreasonable seizure of her person and her property, in violation of the Fourth and Fourteenth Amendments.

59. Sergeant Bailey committed the actions described above under the color of law and by virtue of his authority as a law-enforcement official of the Arkansas State Police.

60. Sergeant Bailey's conduct injured Ms. Johnson by depriving her of the clearly established rights guaranteed to her under the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

### COUNT TWO: First Amendment Retaliation

61. Ms. Johnson incorporates the previous paragraphs as if fully stated herein.

62. The First Amendment guarantees every person a right to engage in free speech.

63. Ms. Johnson was engaged in lawful activity protected by the First Amendment when she observed and recorded on her cell phone the public conduct of police officers, including Sergeant Bailey.

64. Sergeant Bailey took adverse action against Ms. Johnson by screaming at her to leave the scene, seizing her cell phone and person, and stopping her from recording the officers' conduct.

65. Seizure of one's person and property and public reprimand by a police officer would chill or stop a person of ordinary firmness from continuing to observe or record police activity.

66. Sergeant Bailey took these adverse actions against Mr. Johnson because she was exercising her First Amendment rights and to prevent her from continuing to exercise those rights.

67. Ms. Johnson did not commit any crime relating to her encounter with Sergeant Bailey. Sergeant Bailey lacked reasonable suspicion, or even arguable reasonable suspicion, for the seizure of Ms. Johnson's person and cell phone.

68. Sergeant Bailey committed the actions described above under the color of law and by virtue of his authority as a law-enforcement official of the Arkansas State Police.

69. Sergeant Bailey's conduct injured Ms. Johnson by depriving her of the clearly established rights guaranteed to her under the First Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

### RELIEF REQUESTED

70. Plaintiff asks the Court to provide the following relief:
    a. Enter a declaratory judgment that Defendant violated Plaintiff's Fourth and Fourteenth Amendment rights;
    b. Enter a declaratory judgment that Defendant violated Plaintiff's First Amendment rights;
    c. Award nominal damages;

    d. Award Plaintiff attorney's fees and legal costs; and

    e. Provide any other necessary and proper relief to which Plaintiff is entitled.

Dated: December 12, 2024          Respectfully submitted,

*/s/ Shelby H. Shroff*
SHELBY H. SHROFF, ABN 2019234
JOHN C. WILLIAMS, ABN 2013233
Arkansas Civil Liberties
Union Foundation, Inc.
904 W. 2nd St.
Little Rock, AR 72201
(501) 374-2842
shelby@acluarkansas.org
john@acluarkansas.org